767 F.2d 920
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
HARRY C. HOPKINS, PETITIONER,
v.
CONSOLIDATION COAL COMPANY; DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF
LABOR; BENEFITS REVIEW BOARD, RESPONDENTS.
 NO. 84-3407
 United States Court of Appeals, Sixth Circuit.
 6/4/85
 
 Ben.Rev.Bd.
 REVERSED AND REMANDED
 ON PETITION FOR REVIEW OF AN ORDER OF THE BENEFITS REVIEW BOARD
 Before: KEITH and MARTIN, Circuit Judges; and EDWARDS, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Harry Hopkins appeals from an order of the Benefits Review Board which reversed the decision of an administrative law judge who had concluded that Hopkins was entitled to benefits under the Black Lung Benefits Act, 30 U.S.C. Sec. 901, et seq. We conclude that the decision of the administrative law judge was supported by substantial evidence, and we therefore reverse the decision of the Benefits Review Board.
 
 
 2
 Hopkins was a coal miner within the meaning of the Act for more than thirty-five years. He retired in 1977 due to shortness of breath and hip problems. On October 7, 1977, Hopkins filed his application for black lung benefits. The United States Department of Labor reviewed the claim and recommended that benefits be awarded. The responsible employer, Consolidation Coal Company, contested liability but the Department of Labor reaffirmed its position. Consolidation then asked for review by an administrative law judge. Following an adverse decision by the administrative law judge, Consolidation sought review by the Benefits Review Board. The Review Board concluded that Hopkins is not entitled to benefits under the Act, and Hopkins filed this timely appeal.
 
 
 3
 The medical evidence in the administrative record may be summarized as follows: Dr. D. S. Pandian examined Hopkins at the request of the Department of Labor. Dr. Pandian recorded that Hopkins occasionally suffers from a significant cough, is sometimes short of breath, and suffers from nocturnal dyspnea. Based on his physical examination of the patient, Pandian stated Hopkins suffered from pneumoconiosis and that the disease was related to his exposure to coal dust in his employment.
 
 
 4
 An X-ray taken by the Department of Labor was read by Dr. J. T. McMurray, a radiologist, as demonstrating both simple and complicated pneumoconiosis. Dr. McMurray noted that the type 'B' opacity indicated by the X-ray might be related to a neoplastic disease process. The X-ray was reinterpreted by Dr. Cole, a certified 'B' reader. Dr. Cole reaffirmed the reading of simple pneumoconiosis and also noted the presence of a large lesion possibly related to a neoplastic disease process. The X-ray was again reinterpreted by Dr. Paul Francke, a 'B' reader chosen by Consolidation. Dr. Francke agreed that the X-ray indicated the presence of simple pneumoconiosis.
 
 
 5
 At Consolidation's request, Hopkins was referred to Dr. C. L. Anderson, an internist with a subspecialty in pulmonary disease and a B-reader. The medical history conducted by Dr. Anderson revealed that Hopkins has had hip replacement surgery and that he suffers from high blood pressure, diabetes, anterior and substernal chest pain, gout, congestive heart failure, varicose veins, and obesity. Dr. Anderson conducted a chest X-ray and concluded that the X-ray was negative for pneumoconiosis. A ventilatory test yielded an FEV1 of 2.61 and an MVV of 77. A blood gas test revealed a pO2 of 66 and a pCO2 of 32. Based on his examination, Dr. Anderson was of the opinion that Hopkins has no intrinsic lung disease and that the blood gas study demonstrates only that Hopkins suffers from 'mild hypoxemia.'
 
 
 6
 The parties agree that the administrative law judge properly found that Hopkins was presumed to be totally disabled as a result of pneumoconiosis by virtue of 20 C.F.R. Sec. 727.203(a)(1) and (3). Hopkins submitted qualifying X-ray readings and a qualifying blood-gas study. Once the interim presumption of disability was invoked, Consolidation had the opportunity to rebut the interim presumption pursuant to 20 C.F.R. Sec. 727.203(b). Consolidation's rebuttal evidence consists solely of the findings of Dr. Anderson. The question on appeal, therefore, is whether there is substantial evidence to support the administrative law judge's determination that Dr. Anderson's report was not sufficient evidence to rebut the interim presumption.
 
 
 7
 Dr. Anderson concluded his report by stating: 'I do not feel that there is any pulmonary impairment present and that from the respiratory standpoint, Mr. Hopkins would be able to do his regular coal mining job or work requiring similar effort.' The administrative law judge discredited Anderson's conclusion for two reasons. First, Anderson's reading of the chest X-ray indicated that Hopkins did not suffer from pneumoconiosis. The administrative law judge noted that this finding conflicted with the findings of three other doctors, one of whom was Consolidation's doctor of choice. Consolidation argues that, even if Anderson's reading of the X-ray was wrong, that fact should not taint his conclusion with respect to impairment because the presence of pneumoconiosis does not give rise to any medical inference of impairment. That argument contains a logical fallacy. Even assuming that the presence of pneumoconiosis does not give rise to any medical inference of impairment, it is not irrational or inconsistent for a factfinder to conclude that a doctor who failed to observe pneumoconiosis and found a lack of impairment might have changed his or her view on impairment if pneumoconiosis had been observed. In other words, assuming that a finding of pneumoconiosis does not require a finding of impairment, it does not follow that a finding of pneumoconiosis is irrelevant to a finding of impairment.
 
 
 8
 The second reason the administrative law judge gave for discrediting Dr. Anderson's conclusion was that Anderson concluded from the blood gas study that Hopkins suffered from 'mild hypoxemia' rather than from a pulmonary impairment. The blood gas study fell below the standards in 20 C.F.R. Sec. 727.203(a)(3) and thus was sufficient to raise a presumption that Hopkins was disabled due to pneumoconiosis. Consolidation argues that the fact that a blood gas study qualifies under section 727.203(a)(3) does not preclude a finding of no pulmonary impairment. Again, however, it is not irrelevant to the factfinder that a doctor who makes a finding of no impairment has rejected a blood gas study that qualifies under the regulations.
 
 
 9
 We conclude that substantial evidence in the record exists to support the administrative law judge's decision to discredit Dr. Anderson's conclusion. Dr. Anderson's X-ray reading conflicted with that of three other physicians. His conclusion regarding the blood gas study was at odds with that suggested by section 727.203(a)(3). The record presented the administrative law judge with the task he was hired to perform: resolving conflicts in the evidence and viewing conclusions in relation to the underlying credible evidence.
 
 
 10
 Because the decision of the administrative law judge is supported by substantial evidence, the Benefits Review Board erred in reversing that decision. See 33 U.S.C. Sec. 921(b)(3); 30 U.S.C. 932(a).
 
 
 11
 The decision of the Benefits Review Board is reversed, and the case is remanded for an award of black lung benefits.